JESSE CROWELL AND WILLIAM H. DAUGHTRY, PLAINTIFFS IN ERROR, VS. EBENEZER M. SKIPPER, DEFENDANT IN ERROR.

1. The law of the place where a contract is made is, generally speaking, the law by which the contract is to be expounded, but it is, nevertheless, the right of this government to prescribe rules and regulations for the protection and enjoyment of all property which shall be brought within its territorial jurisdiction.

2. The 3rd Section of the Act of 1823, with reference to fraudulent conveyances, (Thomp. Dig., 217, c. 11, § 1,) requires, that where the *possession* of personal property is in one person and the *use* in another, in order to protect it against liability for the debts or contracts of the person in possession, the deed by which it is held must be recorded within five years. Whether or not this section is applicable to contracts made out of this State. Quere?

This is a writ of error sued out by plaintiffs in error to reverse a judgment of Jackson Circuit Court. [As the opinion of the court embraces a statement of the facts presented by the record, the reporter thinks it would but encumber the reports to make out a statement of his own, and hence he refers to the opinion for the facts of the case.]

*James F. McClellan*, for Pltffs. in Error.

*A. H. Bush*, for Deft. in Error.

DU PONT, J., delivered the opinion of the court.

The record presents the following state of case. On the 15th day of January, A. D., 1852, the defendant in error

recovered a judgment against Bennet Whidden in the superior court of Decatur county, in the State of Georgia, for the sum of $143.64, principal, and $20.41, interest. He afterwards brought suit on said judgment in the circuit court of Jackson county, in this State, and recovered a judgment thereon on the 6th day of May, 1853, upon which a writ of fi. fa. was issued and levied upon the property in controversy, viz: negro boy Patrick. The plaintiffs in error interposed a claim to the property as trustees under a deed of marriage settlement for Mary Jane Whidden, the wife of the defendant in execution. The claim was tried by the court below, (a jury having been waived,) and the judgment was against the claimants, and to reverse that judgment, this writ of error is brought.

To support their title to the property, the claimants introduced two deeds in writing—the one purporting to be an antenuptial agreement, by which the defendant in execution, in consideration of a marriage to be consummated with Mary Jane Daughtry, agreed to settle upon her all the property to which she might become entitled. This deed is dated on the 1st day of December, 1848. The other purports to be a conveyance of the property to the plaintiffs in error, as trustees for the separate use and benefit of the wife, and is dated on the 31st day of January, 1850.— Both of these deeds purport to have been executed in Decatur County, State of Georgia, the then residence of the parties, and the *rei sitœ* of the property, and to have been registered in the office of records for said county on the 20th day of February, 1850.

[The consideration of the deed of settlement is stated to be "a marriage already had and solemnized," and at the time of its execution, the property therein conveyed, was in the hands of the administrator of the estate of the father of Mary Jane Whiddon, and not reduced into possession

7

by her husband.  Both  deeds were " filed for  record and recorded the 6th of August, 1852," in Jackson  County, in this State.]

The first  question that arises for  our  consideration  is with respect to the validity of  these deeds  in the State of Georgia, where they were executed, and how far they protected  the  separate estate of the wife, under  the laws of that State, while  the  property remained  in that  jurisdiction.

It is insisted  by the counsel for  the defendant  in error, that  the antenuptial agreement is void for the reason  that it was  not  recorded within  three months after  its execution, in accordance with the requisition of  the laws of  the State of Georgia, and we are referred  to the statute on the subject.   It is unnecessary to enquire  into the validity or invalidity of the antenuptial agreement, inasmuch as there is an  absolute  conveyance of  the property in  the deed of marriage  settlement above referred to.   This latter deed does  not (as  is assumed  by the counsel) purport to have been executed "in pursuance" of the agreement; the consideration of the deed  is stated to be "a marriage already had  and solemnized."   But, even if it had in fact purported to have been made in pursuance of the agreement, and, from some want of formality, the agreement had been rendered void, we do  not see that this could in the slight est degree have affected the validity of the instrument. The making of the deed of settlement was an  act highly proper  in itself, and the consideration of a consummated marriage was sufficient to sustain it as a valid instrument. Circumstanced as this property was, it being still in the hands of  the administrator and not reduced to possession by the husband prior to the date of the trust deed, if it had been necessary to resort to a court of equity to obtain the possession from the administrator, the chancellor in

his decree would, upon an intimation to that effect, have ordered a suitable provision to be made for the separate use of the wife. The trust deed stands upon its own foundation, a marriage consummated, and did not require the support of the antenuptial agreement.

It seems to be admitted on all sides, that the validity of marriage settlements, as *inter partes*, is recognized by the laws of Georgia, and that when the deed of settlement has been properly executed and recorded, it will protect the separate estate of the wife, situated in that jurisdiction, against any liability for the debts and contracts of the husband. Seeing, then, that this was a legal and valid contract under the law of Georgia, and that the property, while it remained in the State, was protected by the deed of trust, the next question that arises is as to the effect produced upon the rights of the parties by a removal of the property into this State. That effect depends entirely upon our local law, for it is the unquestionable right of every government to prescribe rules and regulations for the protection and enjoyment of all property which shall be brought by any one within its territorial jurisdiction. Nor is the practical enforcement of that right at all in conflict with the well settled doctrine that the operative effect of a contract, when not illegal or prohibited by the law of the *forum*, is to be determined by the *lex loci contractus*. Chief Justice Marshall, in the case of Harrison vs. Sterry, (5 Cranch R., 189,) has laid down the doctrine with his usual force and simplicity. His language was: "The law of the place where a contract is made is, generally speaking, the law of the contract, i. e. it is the law by which the contract is expounded. But the right of priority forms no part of the contract. It is extrinsic and rather a personal privilege, dependent on the law of the place where the property lies and where the court sits which is to decide the cause."

Mr. Story quotes Huberus to this point, and announces the doctrine thus: "Foreign contracts are to have their full effect here, provided they do not prejudice the rights of our own country or its citizens."—(Story's Con. Laws, § 324.)

He puts several cases to illustrate the rule: "By the Roman law and the law of Freizeland, an express hypothecation of moveable property, oldest in date, is entitled to a preference or priority even against a third possessor. But it is not so amongst the Batavians, and, therefore, if upon such an hypothecation the party brings a suit in Holland against such third possessor, his suit will be rejected, because the right of such third possessor cannot be taken away by the law of a foreign country."—*Ib.*

He also puts another case: "In Holland, if a marriage contract is privately or secretly made, stipulating that the wife shall not be liable for debts contracted solely by the husband, it is valid notwithstanding it is to the prejudice of subsequent creditors. But, in Friezeland, such a contract is not valid unless published, nor would the ignorance of the parties be an excuse according to the Roman law and equity. If the husband should contract debts in Friezeland, on a suit there, the wife would be held liable for a moiety thereof to the Friezian creditors, and could not defend herself under her private dotal contract; for the creditors might reply that such a private dotal contract had no effect in Friezeland, because it was not published." *Ib.*, § 325.

Story also quotes Mr. Burge to the same point, and says: "The law of a foreign country is admitted in order that the contract may receive the effect which the parties to it intended. No State, however, is bound to admit a foreign law, even for this purpose, when that law would contravene its own positive laws, institutions or policy,

which prohibit such a contract, or when it would prejudice the rights of its own subjects."—*Ib.*, § 327.

Mr. Chancellor Kent expresses the principle thus: "When the *lex loci contractus* and the *lex fori*, as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land."—2 Kent's Com., 461.

In the case of the Ohio Insurance Co. vs. Edmonson, 5 Louis. R., 295, the enforcement of foreign contracts was very elaborately and ably discussed by Mr. Justice Porter, who came to the conclusion " that the contract to which aid is required, should not, either in itself, or in the means used to give it effect, work an injury to the inhabitants of the country where it is attempted to be enforced."

These citations are abundant to show, that it is the right of every government to prescribe the rules and regulations by which rights of property springing out of a foreign contract may be enjoyed and shall be controlled, after and so soon as the particular property shall be brought within its territorial jurisdiction. And if the government do no more than to place the enjoyment and protection of such property upon the same and equal footing with the rights of resident citizens, there assuredly can exist no just ground for complaint. This brings us then to enquire, what would have been necessary to be done in respect to a marriage settlement made and executed in this State, so as to protect the separate estate of the wife against liability for the dets and contracts of the husband. By the 3d section of the act of 1823, usually denominated the " Statute of Frauds," it is enacted that, " where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained for the space of five years, without demand made and pursued by due process of law, on the part of the pre-

tended lender—or where any reservation or limitation shall be pretended to have been made, of a use or property by way of condition, reversion, remainder or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act and that the absolute property is with the possessor, unless such loan, reservation or limitation of use or property were declared by will or deed in writing, proved and recorded as aforesaid." It is proper to remark that in the two preceding sections of this Act of 1823, as published in the pamphlet laws of that year, nothing is said of *proving* or *recording*, and therefore, the words " as aforesaid" occurring in the close of the said 3d section, would seem to be senseless and wholly nugatory, there being nothing to which they may be made to refer. This was doubtless the effect of inadvertance on the part of the Legislative Council, for in looking to the laws passed at the first session in 1822, it will be seen that this section as enacted in the Act of 1823, constituted the 3d section of the Act of 1822, which was passed with reference to " Fraudulent Conveyances." The act of 1822, contained, as does the act of 1823, three sections, and the section of that act did contain a clause in reference to the mode and manner of proving and recording certain conveyances, and the reference embraced in the 3d section manifestly was applicable to that clause.— In the re-enactment of 1823, this particular clause was omitted, and consequently the words " as aforesaid" contained in the 3d section of that act, are left without any particular application. It does not follow however, that the act of *proving* and *recording* as required by the statute is to be dispensed with, and the act thus become nugatory. We are rather inclined to decide, that the proving and re-

cording under this section must conform to the mode prescribed in the statute which provides for the registry of deeds or bills of sale of personal property.

Having thus briefly traced the history of the 3d section of the Act of 1823, (Thompson's Digest,) the question recurs, how is the separate estate of the wife to be protected against liability for the debts and contracts of the husband, when the deed of settlement is made in this State? The answer is obvious—it must be recorded in compliance with the requisitions of that section. Five years is the time prescribed, after which the property is to be deemed to be the property of the possessor so as to render it liable for his debts and contracts, and, in order to protect it, the deed of conveyance must be properly recorded within that time.— If such a case does not come under this section then there is no law on the statute book which requires a deed of this kind, embracing personal property, to be recorded, and being good at common law between the parties, it would be equally good against creditors of the husband.

In the case before us, the deed of settlement purports to have been recorded in Jackson county, in this State, the present domicil of the husband and the *rei sitæ* of the property. But, it is objected that the act of recording is invalid to any purpose whatsoever, and especially as constructive notice, because the certificate of the clerk, which is endorsed upon the original deed, does not state that it was either acknowledged by the parties or proved by a subscribing witness. It is unnecessary to decide this question, for the reason that the statutory prescription of five years has not yet elapsed since the property was brought within the limits of this State, and that defect (if it be one) may yet be remedied. For the same reason, we decline to determine whether the section before referred to will apply to a contract made in another State, or whether it is

exclusively confined to contracts originating in this State. Upon this question there is a difference of opinion in the court, and its determination being unnecessary to the decision of this case, we have deemed it best to withhold an expression of our views until the point shall arise.

Let the judgment be reversed with costs.

BALTZELL, C. J., delivered the following opinion :

I am greatly mistaken if the decision in the case of the Bank of the United States against Elizabeth Lee and others, decided by the Supreme Court of the United States, should not be held as conclusive in this case. A deed of trust was made in Virginia, conveying property, slaves, &c., in trust for a married woman, properly recorded there, held by the husband and wife and subsequently taken to the District of Columbia, in Maryland, where the same possession and holding continued, and where the husband became largely indebted. It was contended on the part of a creditor in the new residence that the deed, not having been recorded in the District, was void as against creditors, &c. The court held that it was not; that the statute of Maryland, declaring that "no goods and chattels whereof the vendor shall remain in possession shall pass, alter or change, or any property thereof be transferred to any purchaser, &c., unless the same be by writing and acknowledged before a justice of the peace where such seller shall reside, and be within twenty days, recorded in the records of the same county," had no application.

"The statute," says the court, "has no reference to a case where the title has been vested by the laws of another State, but operates, only on sales, mortgages and gifts made in Maryland." They take notice of the apparent ownership of the husband and the silence and acquiescence of the wife, and yet maintain her interest. In support

of their decision, they refer to a case decided by the court of appeals in Maryland, (Smith vs. Bruce, 3 Harris & John,) a case in Tennessee, of Crenshaw vs. Anthony, decided by the supreme court of that State—Martin & Geiger Rep., 110–13; Peters' Rep., 118.

In a very recent case, that of DeLaney Moore, decided in 1852, the same question came before the same enlightened tribunal. "It has been made a ground of defence in the answer in the court below, and it has also been insisted on in argument here, that, admitting the antenuptial contract to have been recorded in South Carolina, and, in consequence thereof, to have been so operative as to affect with notice, creditors and purchasers within that State, yet, that upon the removal of the parties, carrying with them the property into another State or jurisdiction, the inference of the contract for the protection of property would be wholly destroyed, and the subject attempted to be secured would be open to claims by creditors or purchasers subsequently coming into existence. The position here advanced is not now assumed for the first time in argument in this court. The case of the U. States Bank vs. Lee, &c., brought up directly for the examination of this court the effect of a judgment and execution obtained by a subsequent creditor in the District of Columbia upon property found within that District, but which had been settled upon the wife of a debtor by a deed executed and recorded in Virginia, according to the laws of that State, the husband and wife being at the time of making the instrument inhabitants of the State of Virginia. The court came *unhesitatingly and clearly* to the conclusion that the deed of settlement recited and recorded in favor of Mrs. Lea, protected her rights in the subject settled, against the judgment of the subsequent creditor in the District of Columbia. We should not be disposed to disturb

8

the doctrine laid down in the case of the U. S. Bank vs. Lee, and in the decisions of the State Courts of Tennessee and Maryland above mentioned, *if the rights of the parties turned upon the operation of the contract as constituting notice, or upon proof of the knowledge on the part of Goree, the purchaser, of the existence of the marriage contract.*" 14 How. S. C. Rep., 267.

The language of the Supreme Court of Mississippi, in the case of Hundley vs. Mount, seems also appropriate.   "The registry laws of the several States do not operate extra-territorially, nor do those of one State operate upon conveyances executed in another unless *express words* to that effect be inserted in the statute." 8 Sm. & Mar., 399.

The case under consideration does not require cases so strong as either of these.  Here is no debt contracted after the removal to Florida.   The deed of trust and the debt were both either executed in Georgia or with reference to its laws, as the parties contracting the debt lived there, and the property was there at the time of its creation.

There is another authority worthy of attention, being an admirably reasoned, and happily expressed opinion of the Supreme Court of New Hampshire, as to the effect of a mortgage made in one State—Massachusetts—attempted to be set aside at the instance of a creditor in another State —New Hampshire.  The objection was to the want of knowledge of the mortgage of record in the new residence. The Court hold that there was no forfeiture of the mortgage interest by the removal, and that the general laws of the State requiring such instruments to be recorded, had no application to a conveyance executed abroad when the parties and property were both out of the State.   Offutt vs. Flagg, 10 New Hampshire, 46.

For these reasons and not for those given in the opinion just delivered, I am in favor of the reversal of the judgment below.